UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., and CRAIG T. RAWLEY, in each case not Individually, but as an Executor of the THE ESTATE OF STANLEY T. RAWLEY, DECEASED, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. <br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR REFUND

Plaintiffs JPMorgan Chase Bank, N.A. (*JPMorgan*), and Craig T. Rawley (*Craig*) (together, the *Plaintiff*), in each case not individually but as an Executor of the Estate of Stanley T. Rawley, Deceased (*Executors*, *Estate* and *Decedent*, respectively), by and through their undersigned attorneys, file this Complaint for Refund (*Complaint*) against the United States of America to recover overpayments of federal estate taxes and interest paid to the Internal Revenue Service (the *IRS* or *Service*) and related statutory overpayment interest.

### THE PARTIES

1.  Plaintiff JPMorgan is an Executor of the Estate and is a national banking association under federal law incorporated in the State of Ohio having a principal office at 1111 Polaris Parkway, Columbus, Ohio 43240, Franklin County, Ohio. Plaintiff Craig is an Executor of the Estate and is an individual residing at 303 Tall Timbers Court, Friendswood, Texas 77546, Galveston County, Texas.

1

2. Defendant is the United States of America, having taken the relevant actions through its agent, the Internal Revenue Service, an agency of the U.S. Department of the Treasury.

## STATEMENT OF THE CASE

3. This is a civil action arising under the laws of the Internal Revenue Code (the *IRC* or *Code*) for the refund of federal estate tax, interest, related statutory overpayment interest and penalties pursuant to IRC §§ 2001, *et seq*., erroneously or illegally assessed against the Estate and collected from Plaintiff in the total amount of $17,337,363.41, or such other amounts as in law and in fact are ultimately recoverable.

## SUMMARY OF THE CASE

4. This case involves a private Texas charity seeking to recover overpayments of tax from the Service. The Decedent and his wife had a long-standing estate plan that gave their wholly-owned Texas business interests to their private Texas charity and, as a result, generated no estate tax attributable to those Texas business interests. Late in the Decedent's life, when he was suffering from dementia, his advisers realized that the existing estate plan would force the Texas charity into a fire sale of the Texas business shortly after Decedent's death, due to IRS rules targeting private charities with penalties for owning operating businesses. With the assistance of Decedent's business employees, the Decedent's advisers devised a new estate plan that was supposed to eliminate a forced fire sale of the business, without generating estate tax on the gift of the business to the private Texas charity. This new estate plan included a restructuring of the Decedent's business that also gave full control over the business to his business employees.

5. When the Decedent died, the Executors realized that the "remedy" devised by the Decedent's former advisors did not give the Decedent the one thing he was supposed to get from the new estate plan – a gift of business interests to charity that would never be subject to a forced

fire sale. Rather, the restructured business, together with the gift of the business interests to charity at the Decedent's death, still forced the charity into a fire sale of the business soon after the Decedent's death. And, even though the business still distributed to charity at Decedent's death, the new estate plan also generated an estate tax of millions of dollars due to arcane and complex tax traps used by the Service to tax charitable bequests.

6. Therefore, the Executors sued the Decedent's business employees (who now controlled the business) to set aside the new estate plan. The Executors succeeded, as a Texas Probate Court ordered the new plan rescinded, returning to the Decedent (now the Estate) full ownership and control of the business, which could now pass to charity tax free. However, the Executors were first forced to pay millions of dollars in estate tax to the Service, as the law provided, for the new structure that was in effect at Decedent's death. Because the Texas Probate Court order turned back the clock, and restored Decedent's business and estate plan to its original, no-estate tax structure, the Executors claimed a refund of the millions of dollars in estate tax they were forced to pay upon Decedent's death. When the Service failed to respond to the Executors' claim for refund, effectively refusing to return the estate tax unnecessarily paid on the charitable bequest, the Executors brought this lawsuit, as is their right under the United States Code.

## PROCEDURAL HISTORY

7. On or about November 21, 2018, Plaintiff timely filed with the Service formal claims for refund for each payment listed below, which form the basis for Plaintiff's claims for refund in this action (collectively, the *Refund Claims*).

| | |
|---|---:|
| Non-Deferred Tax | $ 2,432,424.00 |
| Non-Deferred Tax Late Payment Interest | $ 14,188.68 |
| Deferred Tax | $ 14,010,241.88 |
| 2016 Deferred Tax Interest | $ 283,103.44 |
| 2016 Deferred Tax Late Payment Interest | $ 11,549.50 |
| 2017 Deferred Tax Interest | $ 288,649.41 |

3

|  |  |
|---|---|
| 2018 Deferred Tax Interest | $     283,017.82 |
| **Total** | **$ 17,337,363.41** |

8. Over six months have elapsed since Plaintiff filed the Refund Claims on November 21, 2018. To date, the Service has not issued a notice of claim disallowance within the meaning of IRC § 6532(a)(1).

9. Each Plaintiff has acted as an Executor of the Estate at all times during which the events giving rise to this Complaint occurred.

10. The amount claimed as a refund is allowable under the relevant sections of the Code and other authorities, and the Court should grant Plaintiff's Refund Claims in full.

## JURISDICTION AND VENUE

11. Jurisdiction is proper pursuant to Title 28, U.S.C. § 1346(a)(1), IRC § 6511(a), IRC § 6532(a), and IRC § 7422.

12. Venue is proper pursuant to Title 28, U.S.C. § 1402(a)(1) and § 1391(c)(1). Any civil action brought by a natural person in a district court against the United States for the recovery of any internal revenue tax erroneously assessed or collected may be prosecuted only in the judicial district where that natural person resides. And, for all venue purposes, a natural person is deemed to reside in the judicial district in which that person is domiciled. Title 28, U.S.C. §§ 1402(a)(1) and 1391(c)(1). Craig currently resides (and therefore is domiciled) at 303 Tall Timbers Court Friendswood, Texas 77546, Galveston County, Texas. Accordingly, pursuant to Title 28, U.S.C. §§ 1402(a)(1) and 1391(c)(1), venue is proper in the United States District Court for the Southern District of Texas, Galveston Division.

## FACTS COMMON TO ALL COUNTS

### *Background*

13. During their lifetimes the Decedent and his wife (together, the *Taxpayers*) owned and controlled in equal shares 100% of a closely-held held business structured as a Texas partnership (the *Company*). When read together, the Taxpayers' estate plans (the *Estate Plan*) provided that upon the death of the survivor of them (the *Surviving Spouse*), 100% of the Company interests would distribute to a private foundation, a Texas charitable organization created by the Taxpayers during their lifetimes (the *Foundation*). The Foundation provides funding to support children and youth, health, hospitals and higher education in Houston, Texas, and other Texas communities.

14. For federal estate tax purposes, a decedent's taxable estate is determined by deducting from the value of the decedent's gross estate the amount of all bequests to an organization if such contributions are to be used by the organization exclusively for charitable purposes. *See* IRC § 2055(a)(3); IRC § 2001(a).

15. Accordingly, the entire bequest of the Company interests to the Foundation qualified for the federal estate tax charitable contribution deduction provided for under the Code (the *Charitable Deduction*), which meant that none of the Company interests – which then had a value close to $100 million – would be subject to federal estate tax at the death of the Surviving Spouse.

16. The Decedent's wife died in 2007.

17. Pursuant to the Estate Plan, a "marital trust" was created at the death of the Decedent's wife to hold her 50% Company interests for the benefit of the Decedent during his lifetime (the *Marital Trust*). Then, at the Decedent's subsequent death, the 50% Company interests

held by the Marital Trust would distribute to the Foundation, together with the Decedent's own 50% Company interests.

18. In 2012, the Decedent (who then was suffering from dementia) was advised by his counsel (*Counsel*) and business employees (the *Business Employees*) to reorganize the Company in a way that they believed would permit the Foundation to own the Company interests indefinitely, and not force the Foundation into a fire sale of the Company interests soon after the Decedent's death (the *2012 Reorganization*).

19. Under these assumptions, the 2012 Reorganization was completed in November 2012.

20. The Decedent died in February 2015.

21. The Estate presently is in probate, Case No. PR 36049, in the County Court of Law #3 & Probate Court of Brazoria County, Texas. Pursuant to Decedent's Last Will and Testament and under the authority of the County Court of Brazoria County, Letters Testamentary were issued to the Executors Craig T. Rawley and JPMorgan Chase Bank N.A. on August 7, 2015. The Estate remains in probate at the time of this Complaint.

*The Estate Administration*

22. Executors that are required to file Form 706, United States Estate (and Generation Skipping Transfer) Tax Return (*Form 706*), must file Form 706 and pay all estate and generation-skipping transfer tax due (*Estate Tax* and *GST Tax*, respectively) within nine months of the date of the decedent's death. An estate can, however, request an automatic 6 month extension of time to *file* Form 706 by filing Form 4768, Application for Extension of Time to File a Return and/or Pay U.S. Estate (and Generation-Skipping Transfer) Taxes (*Form 4768*), which also must be filed within nine months of the date of the decedent's death. Filing Form 4768 does not, however, grant

to the Estate an extension of time to pay Estate Tax or GST Tax. Rather, absent special circumstances, all Estate Tax and GST Tax must be paid within nine months of the date of death.

23.     Plaintiff timely filed Form 4768 to request a 6 month extension of time to file the Form 706, and until November 2016 to pay the total Estate Tax due. At that time, Plaintiff approximated a total Estate Tax due in the amount of $22,822,667 (the *Total Estate Tax*).

24.     On or about May 23, 2016, under a valid extension of time to file, Plaintiff timely filed with the Service the Form 706. Plaintiff reported on the Form 706 $22,822,667 as the Total Estate Tax, most of which was attributable to the restructuring of Decedent's business, undertaken before his death by his Counsel and Business Employees to prevent a forced fire sale of the Company. Plaintiff then also filed an election under IRC § 6166 (a *Section 6166 Election*) to further defer the payment of Estate Tax attributable to the Company interests.

### *The Estate Litigation*

25.     While fulfilling the Estate's tax reporting obligations to the Service, Plaintiff JPMorgan discovered that, despite the representations Decedent's Counsel and Business Employees made to the Decedent that the 2012 Reorganization would eliminate the need for a post-death, forced fire sale of the Company, the 2012 Reorganization could not, and actually did not, prevent the need for a forced fire sale.

26.     It became clear to the Executors that the Decedent did not receive what he bargained for in the 2012 Reorganization.

27.     Consequently, on April 30, 2018, Plaintiff JPMorgan filed a Verified Original Petition for Declaratory Judgment (the *Petition*) naming Decedent's Counsel and Business Employees as defendants, claiming (among other things) that the 2012 Reorganization should be rescinded because (a) the Decedent lacked capacity to execute it, and (b) the Decedent did not

receive the only consideration promised to the Decedent for that deal – the ability of the Foundation to own the Company interests indefinitely and the elimination of any need for a forced fire sale of the Company interests soon after the Decedent's death.  The Petition was filed in the County Court at Law #3 & Probate Court of Brazoria County, Texas (the *Texas Probate Court*), and was designated as Cause No. PR 36049-A (the *Litigation*).

28. After initial proceedings in the Texas Probate Court, the Executors, the Decedent's Counsel and the Business Employees (the *Parties*) settled the Litigation by formal, written settlement agreement dated May 18, 2018 (the *Settlement Agreement*), by which the Texas Probate Court rescinded the 2012 Reorganization.  The Company was returned to its original structure, which became the structure in effect as of the date of the Decedent's death.

29. On May 21, 2018, the Texas Probate Court entered a *Final Judgment*, whereby the Texas Probate Court (a) approved the actions and transactions contemplated by, and the terms and conditions of, the Settlement Agreement as fair and reasonable to and in the best interests of the Parties, (b) ordered that all requests for relief in the Petition are granted and judgement is entered on the Petition (which meant that (x) the 2012 Reorganization was rescinded, (y) the Company returned to its pre-2012 Reorganization structure as a matter of Texas law, and (z) the business enterprise is owned 50% by the Estate and 50% by the Marital Trust (collectively, the *Rescission*), and (c) otherwise terminated the Litigation.

### *The Estate Tax Refund*

30. Absent the Rescission, the 2012 Reorganization structure of the Company was in effect at the Decedent's death. Therefore, the Executors were forced to pay over sixteen million dollars in Estate Tax and interest when the Form 706 was due, even though the 2012

Reorganization structure was deemed invalid by the Texas Probate Court and rescinded after the Executors filed the Form 706.

31.     The Estate Tax attributable to the Company interests was entirely due to the split of control over the Company generated by the 2012 Reorganization, by which the Decedent surrendered his control to his Business Employees, even though virtually all of the equity of the Company was still owned by the Decedent and the Marital Trust, and still passed to the Foundation at the Decedent's death.

32.     When the Texas Probate Court invalidated and rescinded the 2012 Reorganization, the Business Employees lost control over the Company. They were therefore forced to either buy-out the Estate and the Marital Trust of their Company interests, or lose their jobs. The Business Employees responded by purchasing 100% of the Company interests held by the Estate and the Marital Trust in a court-approved transaction for appraised, fair market value. This prevented a forced fire sale that otherwise would have occurred if the Company had been subject to the IRS rules restricting ownership of operating businesses by private charities.

33.     With Company ownership and control entirely back in the hands of the Estate and the Marital Trust, the Estate Tax attributable to the Company interests and paid to the Service by the Executors was no longer due from the Estate or the Marital Trust.

### *The Protective Refund Claims*

34.     The Executors anticipated that the Texas Probate Court likely would invalidate and rescind the 2012 Reorganization, given the Decedent's diminished capacity and complete lack of consideration tendered to Decedent.

35.     On or about November 21, 2017, Plaintiff filed IRS Form 843, Claim for Refund and Request for Abatement (*Form 843*), designated as "Protective" (the *Protective Claim*). The

Protective Claim (a) made a protective claim for a refund of a portion of the Estate Tax not attributable to the Company Interests (the *Non-Deferred Tax*) ($8,812,425) and all of the late payment interest on Non-Deferred Tax not timely paid (the *Non-Deferred Tax Late Payment Interest*) ($14,188.68), (b) abatement of penalties and interest, and (c) made a protective claim for refund of amounts arising from any related or correlative adjustments.

### *The Additional Refund Claims*

36. On or about November 1, 2017, the Service issued Letter 6335 which set forth the (a) statutory interest on the Estate Tax attributable to the Company interests deferred under the Section 6166 Election (the *Deferred Tax Interest* and *Deferred Tax,* respectively) that was due (but unpaid) in November 2016 in the amount of $283,103.44 (the *2016 Deferred Tax Interest*), (b) late payment interest on the 2016 Deferred Tax Interest in the amount of $11,549.50 (the *2016 Deferred Tax Late Payment Interest*), and (c) Deferred Tax Interest due in November 2017 in the amount of $288,649.41 (the *2017 Deferred Tax Interest*).

37. On or about November 17, 2017, Plaintiff mailed a check payable to the US Treasury in satisfaction of (a) the 2016 Deferred Tax Interest ($283,103.44), (b) the 2016 Deferred Tax Late Payment Interest ($11,549.50), and (c) the 2017 Deferred Tax Interest ($288,649.41).

38. On or about July 12, 2018, the Service issued Letter 937, requesting that Plaintiff provide (a) a surety bond, and (b) a special consensual lien to secure payment of the Deferred Tax ($14,010,241) from November 2016 through November 2029. If, at any time while a Section 6166 Election is in effect and an Estate is making payments of interest or estate tax, greater than 50% of the business that is the subject of the Section 6166 Election is sold or otherwise disposed of, the extension of time to pay tax no longer applies, and all unpaid tax payable in installments under the Section 6166 Election must be paid upon notice and demand from the Service.

39. On or about September 10, 2018, Plaintiff responded to Letter 937 (the *Letter 937 Response*) to inform the Service of the Rescission as approved and ordered by the Final Judgment of the Texas Probate Court. Plaintiff further advised the Service that, as a result of the Rescission (a) the Section 6166 Election was protective in nature, (b) the Deferred Tax reduced to $0, (c) no interest payments were ever due or will be due the Service, and (d) a refund of estate tax is due Plaintiff.

40. The Letter 937 Response further advised the Service that Plaintiff intended to (a) file a supplemental Form 706 that would compute the correct Total Estate Tax, report a Deferred Tax of $0 and a recomputed estate tax that is less than the $8,812,425 in Non-Deferred Tax already paid (the *Recomputed Estate Tax*), (b) file a claim for refund of estate tax for the difference between the Non-Deferred Tax and the Recomputed Estate Tax, and (c) perfect the Protective Claim.

41. On or about November 21, 2018, Plaintiff timely filed with the Service a supplemental Form 706. Plaintiff also delivered to the Service payment of the amount originally determined to be the Deferred Tax ($14,010,241), together with payment of Deferred Tax Interest in the amount of $283,017 then due (the *2018 Deferred Tax Interest*). Therefore, any tax allegedly or potentially due was paid in full.

42. On or about November 21, 2018, Plaintiff also filed with the Service ten separate Forms 843 for the collective purpose of (a) perfecting the Protective Claim (*i.e.*, the Perfecting Claim, which includes a claim for refund of $2,432,424 in Non-Deferred Tax and $14,188.68 in Non-Deferred Tax Late Payment Interest), and (b) making a formal refund claim as to the payment of the amount originally determined to be the Deferred Tax ($14,010,241) and all of the Deferred Tax Interest ($866,320) (collectively, the *New Claim*).

43. Each Refund Claim was made by way of two categories of Form 843. One category related to the increase in the value of the assets passing to the Foundation and qualifying for the Charitable Deduction resulting from the Rescission (a *§2055 Form 843*). The other category of Form 843 relates to the increase in estate administration expenses resulting from the administration of the Estate and the Litigation (a *§2053 Form 843*).

44. Given the above requirements, Plaintiff filed 10 separate Forms 843 with the Service on November 21, 2018, for the following overpayments:

| | | |
|---|---|---|
| § 2053 Form 843 | Non-Deferred Tax & Late Payment Interest | $ 2,446,612.68 |
| § 2055 Form 843 | Non-Deferred Tax & Late Payment Interest | $ 2,446,612.68 |
| § 2053 Form 843 | Deferred Tax | $14,010,241.88 |
| § 2055 Form 843 | Deferred Tax | $14,010,241.88 |
| § 2053 Form 843 | 2016 Deferred Tax Interest & Late Payment Interest | $ 294,652.94 |
| § 2055 Form 843 | 2016 Deferred Tax Interest & Late Payment Interest | $ 294,652.94 |
| § 2053 Form 843 | 2017 Deferred Tax Interest | $ 288,649.41 |
| § 2055 Form 843 | 2017 Deferred Tax Interest | $ 288,649.41 |
| § 2053 Form 843 | 2018 Deferred Tax Interest | $ 283,017.82 |
| § 2055 Form 843 | 2018 Deferred Tax Interest | $ 283,017.82 |

45. The Service has not responded to the Refund Claims, and has failed to return to the Executors the amounts requested therein which, upon receipt, would be promptly distributed to the Foundation, for further distribution among the communities of Texas for charitable purposes.

46. The Estate is the sole owner of the Refund Claims and has not assigned all or any part of the Refund Claims.

## CAUSES OF ACTION

### COUNT ONE
### OVERPAYMENT OF NON-DEFERRED TAX & NON-DEFERRED TAX LATE PAYMENT INTEREST

47. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

48.     Plaintiff seeks recovery for the overpayment of the Non-Deferred Tax ($2,432,424) and Non-Deferred Tax Late Payment Interest ($14,188.68) in the total amount of $2,446,612.68 or such other amount as is legally refundable in connection with Plaintiff's Refund Claim for the Non-Deferred Tax and Non-Deferred Tax Late Payment Interest. Plaintiff also requests statutory overpayment interest accruing on the amount of the refund under IRC § 6611.

## COUNT TWO
## OVERPAYMENT OF DEFERRED TAX

49.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

50.     Plaintiff seeks recovery for the overpayment of the Deferred Tax in the amount of $14,010,241.88 or such other amount as is legally refundable in connection with Plaintiff's Refund Claim for the Deferred Tax. Plaintiff also requests statutory overpayment interest accruing on the amount of the refund under IRC § 6611.

## COUNT THREE
## OVERPAYMENT OF 2016 DEFERRED TAX INTEREST &
## 2016 DEFERRED TAX LATE PAYMENT INTEREST

51.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

52.     Plaintiff seeks recovery for the overpayment of the 2016 Deferred Tax Interest ($283,103.44) and 2016 Deferred Tax Late Payment Interest ($15,549.50) in the total amount of $294,652.94 or such other amount as is legally refundable in connection with Plaintiff's Refund Claim for the 2016 Deferred Tax Interest and 2016 Deferred Tax Late Payment Interest. Plaintiff also requests statutory overpayment interest accruing on the amount of the refund under IRC § 6611.

## COUNT FOUR
## OVERPAYMENT OF 2017 DEFERRED TAX INTEREST

53. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54. Plaintiff seeks recovery for the overpayment of the 2017 Deferred Tax Interest in the amount of $288,649.41 or such other amount as is legally refundable in connection with Plaintiff's Refund Claim for the 2017 Deferred Tax Interest. Plaintiff also requests statutory overpayment interest accruing on the amount of the refund under IRC § 6611.

## COUNT FIVE
## OVERPAYMENT OF 2018 DEFERRED TAX INTEREST

55. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

56. Plaintiff seeks recovery for the overpayment of the 2018 Deferred Tax Interest in the amount of $283,017.82 or such other amount as is legally refundable in connection with Plaintiff's Refund Claim for the 2018 Deferred Tax Interest. Plaintiff also requests statutory overpayment interest accruing on the amount of the refund under IRC § 6611.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant in the amounts stated in the Refund Claims, or such other amount as may be legally refundable, plus statutory overpayment interest and costs allowed by law, and grant such other relief as the Court may deem just.

Plaintiff hereby requests a jury trial for all issues triable by jury.

Dated:   October  14 , 2019                    Respectfully submitted,

McDERMOTT WILL & EMERY LLP

s/ Calli A. Turner
Calli A. Turner
Texas State Bar No. 24088558
2501 N. Harwood, Suite 1900
Dallas, Texas 75201
(214) 295-8000
(972) 232-3098 (facsimile)
cturner@mwe.com

David A. Baker
Illinois State Bar No. 3123994
*(Attorney-in-Charge)*
*(to be admitted pro hac vice)*
Nicole K. Mann
Illinois State Bar No. 6270208
*(to be admitted pro hac vice)*
444 West Lake Street
Chicago, IL  60606-0029
(312) 372-2000 (phone)
(312) 984-7700 (facsimile)
dbaker@mwe.com
nmann@mwe.com

ATTORNEYS FOR PLAINTIFF
JPMORGAN CHASE BANK, N.A.

*Randall E. Evans*
Randall E. Evans (SBT 06725000)
David A. Sucec (SBT 24060682)
Hirsch & Westheimer, P.C
1415 Louisiana, 36th Floor
Houston, Texas 77002
(713) 223-5181 (phone)
(713) 223-9319 (facsimile)
revans@hirschwest.com
dsucec@hirschwest.com

ATTORNEYS FOR PLAINTIFF
CRAIG T. RAWLEY